The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Bost. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. It is stipulated that all parties are properly before the Industrial Commission, and that the Industrial Commission has jurisdiction of the parties and the subject matter.
2. It is stipulated that all parties have been correctly designated and there is no question as to misjoinder or non-joinder of the parties.
3. In addition to the other stipulations contained herein, the parties hereto stipulate and agree to the following facts:
 a. That an employer-employee relationship existed between the parties on 2 December 1994.
 b. That the parties are subject to the Workers' Compensation Act.
 c. That the average weekly wage of the plaintiff is to be determined by a Form 22 submitted at the time of the hearing by the parties.
************
RULINGS ON EVIDENTIARY MATTERS
The objections contained within the depositions of Drs. Hardy and Pugh are OVERRULED.
************
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was a 36 year-old man with a high school education and two years of college in electrical installation and maintenance. He was employed on 2 December 1994 with First Carolina Management, Inc./Hampton Inn.
2. Prior to working with the defendants, the plaintiff had worked for Simpson Industries as a maintenance technician from September 1988 until March 1992. After leaving Simpson Industries plaintiff operated Woolard's Repair Service from March 1992 until re-obtaining employment with the defendants.
3. Plaintiff had sustained a work-related injury to his back while employed with Simpson Industries when he fell backwards approximately eight feet, striking his back across a two-inch beam. Following that injury, plaintiff was treated by Dr. George Miller, an orthopedist in Washington, North Carolina.
4. After treating the plaintiff for approximately eight months for left-sided low back pain, Dr. Miller discharged him on 15 August 1991 with a one percent permanent partial disability to his back due to residual back pain.
5. Plaintiff was employed with the defendant-employer on two separate occasions from 20 June through 21 July 1994 and on 10 August and 12 August, 1994. The second period of employment ran from 15 November 1994 through 8 December 1994.
6. On 25 July 1994 plaintiff was treated by Dr. Raeford Pugh, his family physician in Washington, for an episode of back pain following a vomiting incident two days earlier. When plaintiff's back pain resolved Dr. Pugh released plaintiff to return to regular duty, effective 10 August 1994.
7. Plaintiff, thereafter, resigned his employment with the defendant-employer and, by testimony, was self-employed for several months before returning to work with the defendant-employer on 16 November 1994.
8. On 16 November 1994, plaintiff submitted his resignation citing problems with a co-employee. However, this resignation was later rescinded.
9. Plaintiff continued to work for the defendant-employer and alleges that on 2 December 1994, he suffered an injury to his lower back when he twisted to replace an old air conditioning unit onto a cart after installation of the new unit. Plaintiff experienced intense back, left hip and leg pain. Plaintiff did not report the injury to anyone at his employer and on 8 December 1994, he submitted another resignation to the defendant-employer giving two weeks notice but never returning to work. He told the defendant-employer at that time that he had obtained a better job earning more money.
10. Following 2 December 1994 plaintiff's pain persisted for several days but he attempted to continue working. Plaintiff did not report his injury to his employer at that time. However, the plaintiff's discomfort did not resolve and he voluntarily resigned his position on 8 December 1994.
11. The Form 22 wage chart completed by the defendant-employer indicates that plaintiff worked a total of eight and four-sevenths weeks with the defendant-employer and earned a total of $2,536.71 while employed there, yielding an B average weekly wage of $295.95.
12. Plaintiff did not seek medical treatment until 24 December 1994 when he presented himself to the Beaufort County Hospital Emergency Department. At that time, he reported to the Emergency Room personnel that he had a four-day history of deep pain down his left lower extremity accompanied by numbness and occasional "charlie-horses." Plaintiff also reported having been seen by Dr. Pugh for said condition; however, this was untrue.
13. The Emergency Room's medical records reveal that someone related a past medical history of a ruptured/herniated lumbar disc. Plaintiff claimed to be unaware of this at the hearing. However, medical records from Dr. Miller in 1990 show an MRI which evidenced a ruptured disc at L4-L5. Upon physical examination he was noted to have an antalgic gait and tenderness around the sciatic nerve in the hip area. Upon discharge the plaintiff was prescribed Percocet for pain and was instructed to follow up with Dr. Pugh, his family physician, the following Monday morning.
14. After the plaintiff reported this claim to the carrier, he gave a recorded statement wherein he stated that on 20 December 1994, he felt a severe increasing pain while feeding his puppies on his basement, concrete floor. Plaintiff later told Dr. Hardy and the Industrial Commission that he had felt a severe pain while moving a trash barrel on 23 December 1994.
15. Plaintiff testified at the hearing that he had not sought treatment following his alleged 2 December 1994 injury until 24 December 1994 because he hoped the pain would pass.
16. Plaintiff's first presentation to Dr. Pugh following his alleged injuries was on 4 January 1995 where he again complained of left hip and leg pain. Dr. Pugh referred plaintiff to Dr. Ira Hardy, a neurosurgeon in Greenville.
17. Dr. Hardy first saw plaintiff on 23 March 1995 and diagnosed a left L4-5 radiculopathy and scheduled him for a CT scan which also confirmed the presence of a left lateral disc protrusion at L4-5. This is the very same level which evidenced a disc protrusion in 1990. Further, this is the very same level and same set of symptoms that plaintiff complained of on 26 July 1994 following a vomiting episode.
18. Based upon the results of the diagnostic test, Dr. Hardy scheduled plaintiff for a left lateral L4-L5 laminectomy with a lateral facetectomy and foraminotomy to remove the extruded disk fragment. The surgical procedure was performed on 18 May 1995.
19. At the time of the hearing, plaintiff alleged that his July symptoms came from a fall from a chair while changing a smoke alarm for the defendant-employer and that also was a workers' compensation claim. Plaintiff, however, had related to Dr. Hardy that he fell from a ladder. Plaintiff admitted at the time of the hearing that he had never reported that injury to the defendant-employer either.
20. Dr. Hardy performed a left lateral L4-L5 laminectomy with removal of the disc fragment on 18 May 1995 and based on plaintiff's continued complaints and new testing, also performed an L4-L5 decompressive laminectomy on 27 December 1995. At the time of his testimony, Dr. Hardy confirmed that the plaintiff was unable to work between 23 March 1995 and the date of the deposition.
21. At the time of the deposition, Dr. Hardy, in response to a question from plaintiff's counsel, stated that he thought the initial injury to the plaintiff's lower back stemmed from falling off the ladder installing the fire alarm and subsequent worsening of plaintiff's condition with the twisting of the air conditioner on 2 December 1995.
22. On 27 December 1995 plaintiff underwent an L4-L5 decompressive laminectomy with bilateral partial facetectomies and foraminotomies. As of 7 February 1996 Mr. Woolard was still under Dr. Hardy's care and had not reached maximal medical improvement nor had he been released to return to work.
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On or about 2 December 1994, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2.
2. On and before 2 December 1994, defendant-employer regularly employed three or more employees, and an employment relationship existed between plaintiff and defendant-employer. N.C. Gen. Stat. § 97-2.
3. On 2 December 1994, plaintiff sustained an injury by accident to his back which arose out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2 (6).
4. As a direct and proximate result of plaintiff's work-related injury by accident on 2 December 1994, plaintiff sustained an injury to his back, and requires further medical treatment. N.C. Gen. Stat. § 97-25.
5. Plaintiff's average weekly wage was $295.95, yielding a compensation rate of $197.30 per week. N.C. Gen. Stat. § 97-2 (5).
6. Plaintiff has not yet reached maximum medical improvement as a result of his compensable injury, and has been unable to return to work with defendant-employer or in any other type of work which plaintiff is vocationally suited. N.C. Gen. Stat. § 97-29.
7. Defendant-employer shall provide plaintiff medical, surgical, hospital, nursing services, medicines, sick travel, and other treatment, including medical and surgical supplies as may be reasonably required to effect a cure or give relief since his last date of work with defendant-employer. N.C. Gen. Stat. § 97-25.
8. As a result of his compensable injury to his back plaintiff is entitled to receive vocational rehabilitation services to assist plaintiff in returning to productive employment, once plaintiff has reached maximum medical improvement and is released by his treating physician to return to work. N.C. Gen. Stat. § 97-25.
9. From and after 23 March 1995, plaintiff was and remains incapable because of his work-related back injury and the resultant pain, to earn wages which he was receiving at the time of his injury at the same or any other employment. N.C. Gen. Stat. § 97-29.
************
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. For plaintiff's continuing temporary total disability compensation, defendants shall pay plaintiff at the rate of $197.30 per week from and after 23 March 1995 and continuing thereafter, at the same rate, until further Order of the Industrial Commission. Amounts which have accrued shall be paid to plaintiff in a lump sum, subject to a reasonable attorney's fee, approved in Paragraph 2.
2. A reasonable attorney's fee in the amount of twenty-five percent of the compensation due plaintiff under Paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be paid as follows: twenty-five percent of the compensation due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be deducted from the sum due plaintiff and paid directly to plaintiff's counsel.
3. To the extent that the same is reasonably designed to effect a cure, give relief or lessen the period of disability, defendants shall pay all medical expenses incurred by plaintiff as a result of his compensable injury. Payment shall be made when bills for the same have been submitted on proper forms, through defendant-carrier to the Industrial Commission for approval.
This the ____ day of June 1997.
 S/ _______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ _______________ THOMAS J. BOLCH COMMISSIONER
S/ _______________ COY M. VANCE COMMISSIONER
DCS:jmf